# SEALED

FILED
U.S. DISTRICT COURT

DAVID B. BARLOW, United States Attorney (#13117)
TYLER L. MURRAY, Assistant United States Attorney (#10308)
Attorneys for the United States of America
185 South States Street, Suite 300, Salt Lake City, Utah 84111
Tel: (801) 524-5682 ◆ Fax (801) 325-3310

2013 AUG 15 A 9: 49

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>A 1976 LEAR JET 24E, N894CJ;<br><br>APPROXIMATELY $32,879.61 IN FUNDS ORIGINALLY CONTAINED IN WELLS FARGO BANK ACCOUNT xxxxxx2991;<br><br>APPROXIMATELY $29,462.59 IN FUNDS ORIGINALLY CONTAINED IN WELLS FARGO BANK ACCOUNT xxxxxx3031; and<br><br>A 2006 HUMMER H2, VIN: 5GRGN23U06H103910;<br><br>Defendants *in Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM***<br><br>**FILED UNDER SEAL**<br><br>Case: 2:13-cv-00772<br>Assigned To : Nuffer, David<br>Assign. Date : 08/15/2013<br>Description: Sealed v. Sealed |

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America files this *in rem* action for forfeiture. The United States alleges:

## NATURE OF THE ACTION

1. This is a forfeiture action under 18 U.S.C. §§ 981(a)(1)(A) and (C). The United States seeks the forfeiture of defendant properties: (1) under 18 U.S.C. § 981(a)(1)(C) because they constitute or are derived from proceeds traceable to offenses constituting specified unlawful

activities—specifically, wire fraud (the "SUA")— in violation of 18 U.S.C. § 1343, or conspiracy to commit such crime; and (2) under 18 U.S.C. § 981(a)(1)(A) because they were properties involved in transactions or attempted transactions in violation of the anti-money laundering provisions of 18 U.S.C. §§ 1956 and 1957 or are traceable to property involved in such transactions.

2. In the alternative, to the extent defendant funds originated from bank accounts and cannot be specifically traced to SUA's, the United States relies on 18 U.S.C. § 984(a)(1), which provides that "in any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, [or] funds deposited in an account in a financial institution (as defined in section 20 of this title), ... it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and ... it shall not be a defense that the property involved in such offense has been removed and replaced by identical property." Any identical property found in the same place or account as the property involved in the offense that is the basis for forfeiture shall be subject to forfeiture so long as the forfeiture action is commenced within one year from the date of the offense. 18 U.S.C. §§ 984(a)(2) and (b).

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1345 and 1355(a). *In rem* jurisdiction is proper pursuant to 28 U.S.C. §§ 1355(b) and (d).

4. Venue in the District of Utah is proper under 28 U.S.C. §§ 1355(b) because the acts or omissions giving rise to the forfeiture occurred in this district, and 28 U.S.C. § 1395 because three of the defendant properties, identified below, were seized in Utah.

## PARTIES

5. Plaintiff is the United States of America.

6. The Defendant Properties are identified as follows and include any interest accrued after the seizure date:

- A 1976 Lear Jet 24E, N894CJ;
- $32,879.61 seized from Wells Fargo account xxxxxx2991 ("WF 2991") in the name of Bixby Bridge Fund ("Bixby Utah");
- $29,462.59 seized from Wells Fargo account xxxxxx3031 ("WF 3031") in the name of SilverLeaf Ventures; and
- A 2006 Hummer H2, VIN: 5GRGN23U06H103910.

7. The jet was seized in Texas on June 18, 2013, and remains there in the custody of the U.S. Marshals Service. The remaining defendant properties were seized from various locations around the Salt Lake Valley in Utah on February 19, 2013, and are currently in the custody of the United States Marshals Service in Utah.

## FACTS SUPPORTING FORFEITURE

8. This case involves a scheme of Dwight Shane Baldwin ("Baldwin") to embezzle approximately $1 million in proceeds from the sale of real estate by diverting the funds to an account Baldwin controlled. Baldwin used these funds for personal purposes.

9. Baldwin owns and operates SilverLeaf Financial; a business located at 1438 North Highway 89, Suite 130, Farmington, Utah 84025-2737. The SilverLeaf Financial website identifies it as "a private equity firm focused on acquiring performing and non-performing, 1st Deed of Trust whole loans secured by cash flowing commercial real estate. SilverLeaf works close [sic.] with the FDIC, banks, special servicers and other financial institutions to purchase assets for the purpose of future monetization."

10. SilverLeaf Acquisition Holdings, LLC ("SAH"), was formed by SilverLeaf Financial in 2011, as indicated in a Private Placement Memorandum and Operating Agreement for SAH, "for the sole purposes of acquiring, managing and liquidating the Loan(s) and/or real estate purchased from [Mission Capital Advisors on behalf of Johnson Bank]." SilverLeaf Financial managed SAH. In 2011, SAH acquired funds from investors and obtained a loan from Bixby Bridge Capital ("Bixby Illinois"). This loan funded the purchase of eight loans previously held by Johnson Bank for which the outstanding unpaid principal amount was approximately $79,626,113. Bixby Illinois is located in Northbrook, IL.

11. One of the loans purchased by SAH with the Bixby Illinois funds was secured by Pine Canyon, a 619-acre property in Flagstaff, Arizona. SAH sold Pine Canyon on or about November 2, 2012. SAH's investors made clear to SilverLeaf Financial (through Silverleaf's president, Mark Staples ("Staples")), that the SAH investors did not want SilverLeaf Financial to have proceeds from the sale of Pine Canyon. Instead, the SAH investors told Staples they wanted $1 million of the sale proceeds to be disbursed from escrow directly to Bixby Illinois in

order to reduce the amount SAH owed to Bixby Illinois. This information was communicated to Baldwin and Baldwin verbally agreed to allow the $1 million to be disbursed to Bixby Illinois.

12. To reflect this agreement, Mr. Staples signed "An Amendment to Loan Fee Agreement," dated November 1, 2012. This Agreement says "SAH and Lender agree, and SAH irrevocably instructs the Escrow Agent, that the Proceeds Due Seller [from the sale of Pine Canyon] . . . shall be retained in Escrow until a mutual written direction to Escrow Agent by SAH and [sic.] is provided. The parties contemplate that such Proceeds will be reduced due to the direct payment from Escrow to Bixby Bridge Fund I, LLC ("Bixby") of the sum of $1,000,000 in order to reduce the obligations of SAH to Bixby."

13. But just before Staples signed this agreement, on October 29, 2012, Jody Rasmussen applied with the Utah Division of Corporations for a Business Name Reservation under the name "Bixby Bridge Fund LLC" with an address at 224 S 200 W, Ste 110, Salt Lake City, UT. This was SilverLeaf Financial's address at the time. A fee of $22.00 was paid by Visa, with a payee listed as Shane Baldwin. On November 30, 2012, a $48.00 payment from the same Visa account completed this corporate registration. Rasmussen was Baldwin's former business partner and since approximately October 2012, Rasmussen has maintained an office for Rasmussen's real estate brokerage business inside SilverLeaf's office space. Rasmussen has also attended SilverLeaf asset management meetings.

14. Around the time of the Pine Canyon sale, Stewart Title and Trust of Phoenix ("Stewart Title"), a title company handling the escrow for the sale of Pine Canyon, requested wiring instructions for Bixby Illinois from Staples. Staples, in turn, requested wiring instructions

from Baldwin because Baldwin had been the contact person with Bixby Illinois. Baldwin later emailed the escrow instructions to Staples who forwarded them to Stewart Title. The wiring instructions provided by Baldwin directed Stewart Title to wire funds to Bixby Utah's Wells Fargo Bank account number xxxxxx2991 (WF 2991).

15. On November 2, 2012, Stewart Title wire transferred $1,000,000 to WF 2991.

16. An SAH investor, called Annexus, had assumed accounting responsibilities for SAH. Ashley Lines ("Lines"), an employee of Annexus, received routine communications from Bixby Illinois. After the Pine Canyon sale closed, Lines received a statement from Kim Banks ("Banks"), a Bixby Illinois employee, that did not reflect the anticipated $1 million payment on the Bixby Illinois loan. On November 26, 2012, Lines contacted Banks and requested documentation showing the $1 million payment. Banks replied that Bixby Illinois did not receive the funds.

17. On November 26, 2012 David Williams, a Principal of Bixby Illinois, sent a follow up email to Lines that stated, "Ashley, go ahead and talk with Shane. I just called him on this, and he claimed that the money is still at the title company, and that he hasn't decided how to allocate the net proceeds from Pine Canyon. Some are proposing to pay down our loan, while others are proposing to distribute the money." Lines relayed this information to SAH investors.

18. This was contrary to the expectations of the SAH investors, and the SAH investors asked a law firm to conduct a records search. The search revealed that Baldwin had reserved the name Bixby Bridge 1, LLC (Bixby Utah) with the Utah Department of Corporations on or about October 30, 2012.

19. After reviewing the escrow documents from the Pine Canyon sale, SAH investors identified a million dollar wire transfer to a Wells Fargo Bank account in the name of Bixby Utah, with the same address as SilverLeaf Financial in Salt Lake City. A Wells Fargo Bank manager confirmed this SAH investor that Baldwin was a signer on the bank account.

20. On November 29, 2012, Officer Brendon Kirkwood ("Kirkwood") with the Salt Lake Police Department interviewed Baldwin about allegations of fraud regarding the above transaction. Baldwin told Kirkwood that he (Baldwin) believed the case was a civil matter and that Baldwin had disbursed the Pine Canyon sale proceeds to a different creditor than the one that [the complainant] wanted. Baldwin later provided Kirkwood multiple emails with approximately 30 attached documents amounting to hundreds of pages of text relating to the above described transaction.

21. About December 26, 2012, Steve Blaser ("Blaser"), one of the SAH investors, confronted Baldwin about the Pine Canyon sale proceeds. Blaser confronted Baldwin about Baldwin diverting funds to a fake bank account and failing to send funds to Bixby Illinois. Baldwin responded that he definitely would not do that and claimed the money was sent to Bixby Illinois. Baldwin told Blaser that he had proof. On December 27, 2012, Julia Roper, Baldwin's assistant, sent an email to Blaser with an attached spreadsheet purporting to document activity on the Bixby Illinois loan. The spreadsheet indicated principal received in the amount of $1,033,877.82 on November 29, 2012. (This is the same date Officer Kirkwood contacted Baldwin).

22. The spreadsheet provided by Baldwin to Blaser contains the following discrepancies compared to a similar spreadsheet sent by Bixby Illinois to Baldwin in December 2012:

   a. The amount of $1,033,877.82 is $283,877.82 in Bixby Illinois' spreadsheet.

   b. Bixby used the Roman numeral "I" in the title of the spreadsheet identifying "Bixby Bridge Fund I LLC" as opposed to the number "1" on the spreadsheet provided to Blaser.

   c. An exit fee of about $531,000 is not on the spreadsheet provided to Blaser.

   d. The placement of the text "Rate: 13.00%" and "Terms: 12 Months" is different.

   e. Payoff numbers are different and understated. The "Pay Off" section on the Bixby Illinois spreadsheet indicates a "Principal" amount of $5,530,752.30; "Accrued Interest thru 12/13/12" as $25,758.79; "Legal" as $17,869.45; "Exit Fee" as $531,705.28; "Total" as $6,106,085.82; and "Per diem" as $1,997.22. The spreadsheet provided to Blaser indicated a "Principal" amount of $4,780,752.30; "Accrued Interest thru 12/13/12" as $25,758.79; "Legal" as $17,869.45; and "Total" as $4,824,380.54.

   f. The spreadsheet provided to Blaser did not indicate an "Exit Fee" or "Per diem," did not have an underline above the "Total," and did not have a double underline below the "Total".

23. On February 20 and February 28, 2013, James Malpede, a special agent with the FBI, interviewed Baldwin. During the interviews, Baldwin said that the Private Placement

Memorandum provided Baldwin, as the SAH manager, broad authority in the management and disposition of funds for SAH. This included authority to dispose of the proceeds from the sale of Pine Canyon as he saw fit.

24. Baldwin claimed SAH owes SilverLeaf Financial in excess of a million dollars. He described three categories of debt between SilverLeaf Financial and SAH: 1) loans of $4,495,215.75; 2) accrued disposition fees of $651,000 plus interest; and 3) inter-company expenses of about $800,000. To support these claims, Baldwin provided various loan agreements between SilverLeaf Financial and SAH. Ultimately, Baldwin admitted most of these agreements were created by him after Officer Kirkwood contacted him on November 29, 2012.

25. Baldwin also alleged the loan between SAH and Bixby Illinois had an interest rate of 13% per year and the loan between SAH and SilverLeaf Financial had an interest rate of 18% per year. Baldwin asserted he had a fiduciary responsibility to manage SAH assets in such a manner as to best benefit the investors of SAH. Baldwin claimed he acted in the best interest of SAH investors by paying down the higher interest rate loan owed to SilverLeaf Financial instead of the lower interest rate loan to Bixby Illinois.

26. Baldwin initially claimed that Bixby Utah was created to facilitate repayment of a debt owed by Baldwin and SilverLeaf Financial to Jody Rasmussen. At first he claimed that Rasmussen operated Bixby Utah and made all of the decisions on how the business operated and that Baldwin had no authority over the business. He also originally claimed that Rasmussen then loaned the Pine Canyon sale proceeds back to Baldwin.

Page **9** of **16**

27.  Baldwin eventually admitted that he created Bixby Utah with the assistance of Jody Rasmussen to hide the disposition of the Pine Canyon sale proceeds to SilverLeaf Financial from investors. He admitted the transaction was not transparent to the SAH investors. Baldwin said he conducted the transaction as he did and hid the truth from investors to ensure the completion of the Pine Canyon sale. He stated the Bixby Bridge Fund name was established to mirror the Bixby Bridge Fund name of Bixby Illinois and admitted that Jody Rasmussen did not loan the funds back to Baldwin. Baldwin admitted that he essentially controlled Bixby Utah and the associated bank accounts. He stated he regretted doing this, that if he could go back and do it differently he would, and that he should not have conducted the transaction the way he did.

## TRACING OF THE PINE CANYON SALE PROCEEDS

28.  A forensic accountant analyzed the disposition of the Pine Canyon sale proceeds for the period November 2, 2012, to December 24, 20012 (analysis period). The forensic accountant traced the diverted proceeds from the Pine Canyon sale into the defendant properties as follows:

**Wells Fargo Bank Accounts**

29.  On November 2, 2012, Stewart Title wired the proceeds of the Pine Canyon Sale to Bixby Utah's bank account, WF 2991 in the amount of $1,000,000. WF 2991 was opened on October 30, 2012, in the name of "Bixby Bridge Fund LLC." Baldwin and Rasmussen are signers on this account. At the time of this transfer WF 2991 had a zero balance. No other deposits went into this account during the analysis period.

30. On November 15, 2012, Wells Fargo Bank Account xxxxxx3031 (WF 3031) received via transfer $100,000 of traceable SUA proceeds from WF 2991. WF 3031 was opened on November 7, 2012, in the name of "Silverleaf Ventures LLC." Baldwin and Rasmussen are signers on this account. At the time of this transfer WF 3031 had a zero balance. No other deposits went into this account during the analysis period.

**2006 Hummer H2**

31. On November 19, 2012, $29,022 was wire transferred from WF 2991 to Land Rover of Centerville, Utah for the purchase of a 2006 Hummer H2 VIN 5GRGN23U06H103910. Sales documents indicate that Shane and Dana Baldwin made a previous $1500 deposit via credit card for the Hummer purchase on November 5, 2012. A sales contract dated November 6, 2012, and signed by Dana Baldwin ("Dana" or "Dana Shelby"), indicates a purchase price plus all associated charges totaling $30,522.45. The purchaser is listed as Denovo Athlete Management LLC with an address of 2891 Hobbs Creek Drive, Layton, UT 84040. Property at this address is owned by Shane Baldwin. Dana Baldwin also signed other related sales documents and these list Denovo Athlete Management as the owner. The source of the $29,022 is SUA proceeds from WF 2991.

**1976 Lear Jet 24E**

32. America First Credit Union Account 266430-8-1 (AFCU 3081), is a savings account owned by Dana Baldwin and opened on September 12, 2011. Dana Baldwin is the signer on this account. On November 19, 2012, AFCU 3081 received a $577,763 wire from WF

2991. At the time of this transfer AFCU 3081's balance was $2,643.31. During the analysis period, the only other deposit was $17.09 in interest.

33. On November 26, 2012, Jetstream Escrow & Title ("Jetstream") received a $100,000 wire from AFCU 3081 for the purchase of a 1976 Lear Jet 24E, registration number N894CJ. The source of the $100,000 wire is the $577,763 in SUA proceeds wired to AFCU 3081 from WF 2991 on November 19, 2012, referenced above.

34. Jestream records related to this transaction show the above-described jet was purchased by CRP National, LLC for $100,000. The records include a Purchase Agreement, delivery receipt, Aircraft Registration Application, and Statement in Support of Registration of the United States Civil Aircraft in the Name of a Limited Liability Company Documents ("Jetstream Sale Records"). The purchase agreement had a draft date of November 20, 2012. Dana Shelby signed the Jetstream Sales Records for CRP National LLC as its "member."

35. On February 20, 2013, Agent Malpede interviewed Baldwin's wife, Dana. Dana Baldwin acknowledged the $500,000 transfer into her bank account, AFCU 3081, by Baldwin in November 2012. She admitted that she did all subsequent transfers of funds at Baldwin's direction. Dana Baldwin advised CRP National was established as a limited liability company because Baldwin wanted to protect certain assets. She admitted that she and Baldwin purchased a 1976 Lear Jet in the name of CRP National for approximately $100,000. The funds came from the AFCU 3081. Dana Baldwin acknowledged her signature on the Jetstream Sales Records. Dana Baldwin also acknowledged an e-mail dated November 28, 2012, from her Gmail account which included "On behalf of CRP National, you have my authorization to close. Dana (Shelby)

Baldwin. Sent from my iPhone". Dana Baldwin admitted acting at Baldwin's direction in all of the Jetstream transactions.

36. The use of the wires to divert funds from the sale of Pine Canyon to WF 2991 and/or to conceal that diversion constitutes wire fraud, in violation of 18 U.S.C. § 1343 and generated SUA proceeds of at least $1,000,000.

37. In addition, these activities, including placing assets purchased with SUA proceeds in the name of Mrs. Baldwin, Denovo Athlete Management, and/or CRP National, demonstrate an attempt to conceal or disguise the nature, location, source, ownership, or control of the SUA proceeds obtained by Mr. Baldwin, in violation of 18 U.S.C. § 1956.

38. In addition, the $100,000 wire transfer to WF 3031, and the purchase of the 2006 Hummer H2 and the 1976 Lear Jet 24E involved a monetary transaction involving more than $10,000 in SUA proceeds, in violation of 18 U.S.C. § 1957.

### FIRST CLAIM FOR RELIEF
### 18 U.S.C. § 981(a)(1)(C)
### (Forfeiture of Wire Fraud Proceeds)

8. The United States incorporates by reference all allegations previously made.

9. 18 U.S.C. § 981(a)(1)(C) provides, in part, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a SUA as defined in 18 U.S.C. § 1956(c)(7), or conspiracy to commit such offense.

10. 18 U.S.C. § 1343 prohibits wire fraud or any conspiracy to commit such offense, and is a specified unlawful activity under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).

11. In light of the foregoing, all of the defendant properties listed above constitute and are derived from proceeds traceable to an offense constituting a SUA in violation of 18 U.S.C. § 1343 and thus are subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

12. 18 U.S.C. § 984 provides that identical property found in the same place or account as traceable proceeds from the violations of 18 U.S.C. § 1343 is subject to forfeiture, as long as the forfeiture action is commenced a year or less from the date the offenses occurred.

## SECOND CLAIM FOR RELIEF
### 18 U.S.C. § 981(a)(1)(A)
### (Forfeiture of Property Involved in Money Laundering)

13. The United States incorporates by reference all allegations previously made.

14. 18 U.S.C. § 981(A)(1)(A) provides for forfeiture of all property, real or personal, involved in a transaction in violation of 18 U.S.C. §§ 1956 or 1957, or any property traceable to such property.

15. As set forth above, WF 3031, the 2006 Hummer H2, and the 1976 Lear Jet 24E are defendant properties involved in financial transactions in violation of 18 U.S.C. §§ 1956 and 1957 and are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984.

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully asserts that defendant properties are forfeitable to the United States under 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984:

The United States further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(i), the Clerk of the Court issue a Warrant and Summons for Arrest of Articles *In Rem* as to the defendant properties;

B. That notice of this action be given to all persons known or thought to have an interest in or right against the properties;

C. That defendant properties shall be forfeited and condemned to the United States of America;

D. That after trial the Court decree, confirm, enforce and order an Order of Forfeiture as to the defendant properties to the United States; and thus order the United States Marshal, or its delegate, to dispose of the defendant properties as provided by law; and

E. Award Plaintiff, the United States, its costs all other relief to which it is entitled.

Dated: August 15, 2013.

DAVID B. BARLOW
United States Attorney

Tyler L. Murray
Assistant U.S. Attorney

## VERIFICATION

I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed by the FBI since 1998. I am currently assigned to the White Collar Crime Squad in the Salt Lake City Division's office in Salt Lake City, Utah and am assigned responsibility for this case.

I have read the foregoing Complaint for Civil Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the facts contained therein are true and correct to the best of my knowledge and belief.

Executed on this 12th day of August, 2013.

James Malpede, Special Agent
Federal Bureau of Investigation



JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**DEFENDANTS**
A 1976 LEAR JET 24E, N894CJ, et al.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Salt Lake
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
United States Attorney's Office
Tyler L. Murray, Assistant United States Attorney (#10308)
185 South State Street, Ste. 300
Salt Lake City, UT  84111   (801) 524-5682

Attorneys (If Known)

FILED U.S. DISTRICT COURT
2013 AUG 15 A 9:49
DISTRICT OF UTAH
BY: _____
DEPUTY CLERK

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☒ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. § 981(a)(1)(A) and (C) and 984
Brief description of cause:
Property is proceeds of wire fraud and money laundering

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE  8·15·13
SIGNATURE OF ATTORNEY OF RECORD  /s/ Tyler Murray

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____

Case: 2:13-cv-00772
Assigned To : Nuffer, David
Assign. Date : 08/15/2013
Description: Sealed v. Sealed